NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0178n.06

No. 11-6488

**FILED**

**Feb 15, 2013**

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,      )
                               )
    Plaintiff-Appellee,        )
                               )
v.                             )    ON APPEAL FROM THE UNITED
                               )    STATES DISTRICT COURT FOR THE
JERMAINE HOWARD,               )    EASTERN DISTRICT OF TENNESSEE
                               )
    Defendant-Appellant.       )

Before:  MOORE, SUTTON and DONALD, Circuit Judges.

SUTTON, Circuit Judge.  A sawed-off shotgun caught the eye of Chattanooga police officers as they searched a home for stolen car keys, leading to the conviction of Jermaine Howard on two gun charges.  On appeal, Howard claims a federal prosecutor withheld evidence en route to the convictions and that the district court should have ordered a competency hearing prior to sentencing. We affirm.

I.

Chattanooga police received a report of a stolen vehicle complete with the street where they could find the car.  It turned out that the "stolen" vehicle complaint boiled down to a payment dispute between Howard and an acquaintance who had sold Howard the car.  Unaware of the back story, two officers responded on the assumption that they were looking for a stolen vehicle.  They

found the car at Howard's girlfriend's home. When they approached the house, Howard came outside. He told the officers the keys to the car were in the house but that the officers could not go inside without his girlfriend's permission. The officers waited until the woman returned, and she permitted the officers to search for the keys.

The keys were not all the officers found. A shotgun, illegally modified with a shortened barrel, sat on top of a dresser in one of the bedrooms. In the dresser drawer were a few more items of interest: a shotgun shell, a driver's license application filled out in Howard's name and mail bearing Howard's name at that address. In a nearby dresser, the officers found a box of shotgun shells.

Federal prosecutors took over and indicted Howard for possession of a firearm and ammunition by a convicted felon, 18 U.S.C. § 922(g), and possession of an unlawful short-barreled shotgun, 26 U.S.C. §§ 5861(d), 5845(a). A jury convicted him on both counts, and the district court sentenced him to 103 months in prison.

II.

Howard claims that, before trial, the prosecutor impermissibly withheld "crucial" fingerprint test results. Appellant Br. at 3; *see Brady v. Maryland*, 373 U.S. 83, 87 (1963). He is right about one thing: A miscommunication between forensic technicians and federal prosecutors led to a failure to disclose a fingerprinting report. He is wrong about another: the report was not "crucial."

Before trial, Howard asked the government to disclose any fingerprint results. A forensics case agent told the prosecutor "[t]hey were unable to locate any fingerprints." R. 121 at 50. The prosecutor relayed that information to Howard, saying "no fingerprint tests were done." *Id.* Howard learned at trial that this last statement was not quite true. On cross-examination—and to everyone's surprise—one of the investigating officers said that the gun and bullets had been fingerprinted and that crime-scene technicians had a report of the results. During a trial break, the prosecutor obtained a copy of the report. But this suspense-filled recess ended with a fizzle, as the report revealed that the technicians had recovered only unidentifiable smudges on the box of shotgun shells.

Because the prints were unidentifiable, the court ruled that the report's late disclosure was not prejudicial and denied Howard's motion for a mistrial. When the trial reconvened, Howard's counsel cross-examined the investigating officer about the report and the fingerprints. The government did not mention the fingerprint evidence, in truth the absence of fingerprint evidence, at trial.

A successful *Brady* claim has three components: favorable evidence, suppression and prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The government's withholding of evidence does not prejudice the defendant unless "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280. Prejudice is more difficult to prove when the evidence comes to light at trial, rather than after, because the defendant may then have a "full and adequate" opportunity to use the evidence. *United States v. Holloway*, 740 F.2d 1373, 1381 (6th Cir. 1984).

Howard has not shown prejudice. The jury heard evidence that Howard was present in the home where police found the gun sitting on a dresser. Howard's license application and personal mail—sent to that address—were in the dresser drawer next to a shotgun shell. Police found an additional box of shells in a nearby drawer, and there was no doubt who owned them. During a Mirandized interrogation, Howard admitted to buying the shells at Wal-Mart: "It must not be illegal, or they wouldn't have sold them to me." R.121 at 145. All of this showed that Howard possessed the gun and the ammunition.

In the face of this evidence, how would an earlier disclosure of finger smudges on the box of shotgun shells have been "crucial" to Howard's case? How could the evidence have exonerated him? The unidentifiable prints were not critical. And they could not plausibly have exonerated him. An unidentifiable print proved only a neutral point—that someone, anyone (including potentially Howard), touched the box. At best the test results showed that the government lacked fingerprint evidence pointing to Howard, a truth he already knew. Howard insists he was denied the opportunity to have his own expert review the fingerprint report. But he does not tell us what good that would have done. Howard in the end has not shown a reasonable probability that an earlier disclosure would have altered the trial's outcome. The *Brady* claim thus must fail.

Howard next claims that the district court should have given him a competency hearing before sentencing. A district court should grant such a hearing if there is "reasonable cause to believe" the defendant is mentally incompetent. 18 U.S.C. § 4241(a). We review a district court's

"reasonable cause" determination for abuse of discretion. *United States v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007).

The district court held a hearing before trial and determined that Howard was mentally competent despite having some history of mental illness. After trial, Howard's counsel moved for another competency hearing because Howard had refused to allow his counsel to see him. The motion recounted counsel's attempt to meet with Howard in prison and Howard's response—a handwritten note that said, "I am sick on meds tell him to write me." R.112 at 1. And the prison chaplain had followed up with a phone call to counsel, informing him that Howard was too sick to meet in person. The district court denied the motion, reasoning that Howard's refusal to meet with counsel face to face did not establish incompetency.

That was not an abuse of discretion. The district court had already held a pretrial competency hearing and based its decision on testimony from a forensic psychologist. And it was reasonable for the district court to conclude that Howard's mental health after trial had not changed. Howard's handwritten note suggested a willingness to correspond with counsel in writing, undermining the notion that he lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *United States v. Miller*, 531 F.3d 340, 348 (6th Cir. 2008). Further, the defense's own subsequent psychological evaluation, completed prior to sentencing, resulted in a conclusion that Howard was competent. *See* R.115.

No. 11-6488
*United States v. Howard*

III.

For these reasons, we affirm.