**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0043n.06

Case No. 13-1132

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jan 17, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
)
                                        ) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR
) THE WESTERN DISTRICT OF
CHARLES LEE CANNON, ) MICHIGAN
)
    Defendant-Appellant. )
)
)

BEFORE: SUTTON, McKEAGUE and WHITE, Circuit Judges.

SUTTON, Circuit Judge. Charles Cannon challenges his conviction and sentence on an assortment of grounds. We affirm.

Cannon and Carlos Watts, both cocaine dealers, met in the summer of 2010 while jailed in a Michigan prison. They became friends and often discussed drug dealing practices. Before long, they agreed to sell cocaine together after their release, with Cannon agreeing to supply the drugs, Watts the customers.

When both men were released from jail later that summer, they set to work in Battle Creek, Michigan. The drug-distribution scheme contained all of the usual features, so usual that

the operation bordered on the cliche. Cannon and Watts set up drug houses where they stored, prepared and sold the cocaine. They recruited employees (mostly prostitutes) to help them make sales. And to protect themselves and their stash of drugs, they carried guns and hired a bodyguard.

After police uncovered the venture, federal prosecutors charged Cannon and Watts with drug and gun offenses. Watts accepted a plea offer, but Cannon insisted on going to trial. Watts and other participants in the conspiracy testified against Cannon. So did Cannon's estranged wife, apparently paying no heed to a letter from Cannon that seemed to urge her to commit perjury on his behalf. A jury convicted Cannon of conspiracy to possess and to distribute cocaine base, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), 846, and possession of a firearm by a felon, 18 U.S.C. § 922(g).

The district court applied a series of enhancements to Cannon's sentence. It concluded among other things that Cannon willfully attempted to obstruct justice in his prosecution, U.S.S.G. § 3C1.1, that he "maintained a premises for the purpose of manufacturing or distributing a controlled substance," *id.* § 2D1.1(b)(12), and that he "was a manager or supervisor" in a "criminal activity [that] involved five or more participants," *id.* § 3B1.1(b). Together these enhancements yielded a guidelines range of 292–365 months, and the court sentenced Cannon to 328 months, a little more than 27 years.

On appeal, Cannon challenges his conviction and sentence on several grounds: (1) the district court erred in admitting the letter to his estranged wife; (2) the court should not have applied the (a) obstruction-of-justice, (b) maintaining-a-premises and (c) manager/supervisor sentencing enhancements; and (3) the district court imposed an unreasonable sentence.

1. *Admission of the letter*. An evidentiary privilege shields confidential communications between spouses, but the privilege does not apply to communications between "permanently separated" individuals. *United States v. Porter*, 986 F.2d 1014, 1019 (6th Cir. 1993). Invoking the permanent-separation exception, the trial court permitted the prosecution to introduce a letter Cannon sent his wife Shandin Chase while awaiting trial in June 2012. The letter discusses Cannon's family, drug habit and impending prosecution. Cannon challenges the district court's conclusion that Cannon and Chase had permanently separated by the time he sent the letter. In the absence of an abuse of discretion, we must respect the district court's ruling. *Id.*

We see no error, let alone reversible error, in the district court's decision. Cannon's marriage with Chase was tumultuous; the couple had separated approximately ten times. In May 2012, they got into a fight. Chase hit her husband with her fist and scratched his neck, leaving a three-inch gash. After the incident, Chase separated from Cannon for the last time. Chase testified that she wanted to get "out of the drug life," that she had no interest in saving the marriage, that she did not wish to speak to Cannon and that she intended to file for divorce. R. 93 at 53, 123. Chase also agreed that after May 2012 she had "permanently separated" from Cannon. R. 93 at 53, 89. We have upheld a permanent-separation finding on the strength of much less. *See Porter*, 986 F.2d at 1018 (affirming permanent-separation decision where the wife testified that she "moved out" after the husband failed to visit her in the hospital, and the couple had been apart for less than two weeks when the husband made the relevant communication).

Cannon's contrary arguments do not persuade. Past is precedent, Cannon begins: He got back together with Chase after each of the nine preceding separations, suggesting that the tenth would be no different. But nothing in the record suggests that any of the preceding separations

resulted from a violent encounter between the spouses or prompted Chase to end the marriage. So far as the record shows, the tenth time *was* different. Cannon persists that after the separation he sent Chase money for their children. But divorced spouses, indeed most especially divorced spouses, regularly pay child support.

2.a. *Obstruction-of-justice enhancement.* The guidelines enhance the range of a defendant who willfully attempts to obstruct justice at his trial. U.S.S.G. § 3C1.1. The district court applied this enhancement to Cannon because, in the just-mentioned letter to his wife, he wrote: "[M]y lawyers will be sending some paper work also. [B]ecause you know that any drugs I bought over the past 7 years we been together was for me to do up my nose or smoke out a pipe. I never bought any drugs for the purpose to sell. . . . I need you to come to court and tell the truth." R. 86-1. The court construed the statement as urging Chase to testify falsely that Cannon never dealt drugs. Cannon concedes that urging a witness to commit perjury triggers the enhancement, but he denies that he encouraged his wife to commit perjury. We have no license to ignore this factual finding unless the court committed clear error in making it. *See United States v. Orlando*, 363 F.3d 596, 600 (6th Cir. 2004).

The district court's ruling passes clear-error review. Cannon's claim that he bought drugs only to use them and never to sell them was manifestly false—as Chase, who had seen Cannon deal drugs, well knew. Why would a defendant tell a witness something that both of them knew to be false? One explanation, an entirely plausible one here, is that he wanted her to repeat the lie in court. More, the lie appears sandwiched between a reference to paperwork from the defense attorney and a request that Chase testify. Context bolsters the conclusion that Cannon lied not just because he liked lying, but because he wanted Chase to incorporate the lie into her testimony. Still more, the quoted passage comes after a discussion of Cannon and Chase's life

4

together, which in context reads like an effort to motivate Chase to help Cannon out. Beyond that, Chase testified that she interpreted the letter as an invitation to lie. The attempt to suborn perjury may have been subtle, but the obstruction enhancement covers subtle efforts no less than brazen ones. *See United States v. Bingham*, 81 F.3d 617, 632 (6th Cir. 1996) (upholding enhancement where the defendant attempted "indirectly, and perhaps even somewhat ambiguously, to have" his girlfriend lie under oath for him).

Cannon responds by highlighting the sentence "I need you to come to court and tell the truth." It is conceivable that Cannon meant "tell the truth" literally rather than figuratively. Anything is possible. But it does not seem likely, and most importantly the district court permissibly could find it unlikely, given that the "truth" Cannon wanted her to convey—that he possessed drugs only for personal consumption—was a patent falsity. On this record, the existence of this alternative interpretation of the letter does not show clear error.

b. *Maintaining-a-premises enhancement*. "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance," the guidelines enhance the sentencing range. U.S.S.G. § 2D1.1(b)(12). Because Cannon and Watts used various drug addicts' houses to store and sell drugs, the district court applied the enhancement. Cannon does not dispute the district court's decision that he used these houses "for the purpose of manufacturing or distributing a controlled substance"; he challenges the court's conclusion that he "maintained" the houses.

The district court got it right. "Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the

defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D.1.1 cmt. n.17; *see also Stinson v. United States*, 508 U.S. 36 (1993) (treating Guidelines commentary as binding). Cannon and Watts rented the relevant houses from drug addicts, often paying them with cocaine. Cannon and Watts also controlled access to and activities at the houses. They often would post a bodyguard at the door, and they used guns to protect the premises. All of these factors considered, Cannon "maintained" the relevant premises.

Cannon replies that, because he never formally leased any of the houses in question, he did not "rent" the premises. But the maintaining-a-premises enhancement does not come with a Statute of Frauds defense. In ordinary speech, an individual who pays another person for the use of a house has "rented" the house, whether he signs a contract to that effect or not, whether he pays with a check or not. Elevating a signed lease to a prerequisite for applying this enhancement also makes little sense. Drug kingpins are not known for signing leases for their drug houses. The argument at any rate does not matter. Even if we ignore the absence of a formal lease or the method of payment, Cannon's control over the houses suffices to trigger the enhancement.

Cannon had a better argument, one he neither raised in the district court nor raised here. He finished committing his offenses in September 2010. But the maintaining-a-premises enhancement was adopted only in October and took effect only in November of that year. *See* U.S.S.G. supp. app. C, amend. 748; 75 Fed. Reg. 66188 (Oct. 27, 2010). And the Ex Post Facto Clause prevents a court from enhancing a defendant's sentence on account of guidelines "promulgated after [the] defendant committed his criminal acts." *Peugh v. United States*, 133 S. Ct. 2072, 2078 (2013). Cannon has forfeited this argument by failing to present it. Even if Cannon had pressed this argument, moreover, the result of this case would remain the same. The

district court said with clarity that it would impose the same sentence even if the maintaining-a-premises enhancement did not apply. Because any mistake "did not affect the district court's selection of the sentence imposed," it was harmless. *Williams v. United States*, 503 U.S. 193, 203 (1992).

c. *Manager/supervisor enhancement.* The guidelines call for an enhancement "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants." U.S.S.G. § 3B1.1(b). The district court concluded that Cannon's role in the conspiracy justified the enhancement. Cannon does not deny that the conspiracy involved at least five participants; he denies that he managed or supervised them. Although as a general rule we give fresh review to legal conclusions, we review the court's application of this fact-intensive guideline with deference. *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013).

The record amply shows that Cannon managed or supervised at least some of the drug venture's employees. Cannon for starters co-founded the drug dealing partnership with Watts. Responsible for the partnership's supply of cocaine, he retained a leading role in the partnership even after its founding. He directed prostitutes to sell the partnership's cocaine. He directed one employee to buy ammunition. And on at least one occasion he directed an employee to hide cocaine from nearby police officers. All of this goes well beyond what it takes to activate the manager/supervisor enhancement. *See United States v. Munoz*, 233 F.3d 410, 416 (6th Cir. 2000) (holding that coordinating a single delivery of drugs through a courier suffices).

Cannon insists that he did not "control" any of the employees. The claim as an initial flaw contradicts evidence presented at trial. But it suffers from a greater problem: It conflates the enhancement for "a manager or supervisor" with the more severe enhancement for "an

7

organizer or leader." U.S.S.G. § 3B1.1. Control over subordinates is necessary to trigger the organizer/leader enhancement, and is one of the factors that distinguishes an organizer or leader from a manager or supervisor. *United States v. Mitchell*, 295 F. App'x 799, 802 (6th Cir. 2008); *see* U.S.S.G. § 3B1.1 cmt. n. 4 ("In distinguishing a leadership and organizational role from one of mere management or supervision, . . . the court should consider . . . the degree of control and authority exercised over others."). The court permissibly applied the enhancement.

3. *Substantive reasonableness*. We review the length of Cannon's sentence, 328 months in prison, for its reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). The sentence must stand unless the district court abused its discretion. *Id.*

Cannon complains that, while the district court sentenced him to 328 months after his trial, the court sentenced his fellow conspirator Watts to 156 months after Watts pled guilty and cooperated with the government. He contends that the court slighted 18 U.S.C. § 3553(a)(6), which requires sentencers to consider "the need to avoid unwarranted sentence disparities." But we have held time and again that § 3553(a)(6) refers to "*national* disparities," not to any disparity between the defendant and a coconspirator. *See United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). Cannon does not allege a disparity between his sentence and the sentences of similarly situated defendants across the country.

Cannon persists that, even apart from § 3553(a)(6), the district court had to account for the divergence between his sentence and Watts's sentence. But a district court does not abuse its discretion by tolerating a disparity between a conspirator who accepts a plea bargain (and cooperates with the government) and a fellow conspirator who insists on trial. *See id.* at 522.

8

The whole point of the plea bargaining system is to treat a defendant more leniently if he pleads guilty.

For these reasons, we affirm.