RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 17-5448

PABLO HERNANDEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:16-cr-00049-1—Danny C. Reeves, District Judge.

Decided and Filed: January 17, 2018[*]

Before: ROGERS, McKEAGUE, and WHITE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Elizabeth S. Hughes, GREEN CHESNUT & HUGHES, PLLC, Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Pablo Hernandez pled guilty to conspiring to distribute 2 kilograms of cocaine. Hernandez was to receive the 2 kilograms from a larger, 28-kilogram shipment of cocaine as payment for an outstanding debt. At sentencing, the district court held

---

[*]This decision was originally filed as an unpublished opinion on January 17, 2018. The court has now designated the opinion for publication.

Hernandez responsible for all 28 kilograms because he volunteered to locate the whole shipment after it had gone missing prior to delivery. Hernandez objects to this finding and insists that he should be sentenced based solely on the 2 kilograms he was slated to personally receive. If held responsible for the entire shipment, he seeks, in the alternative, a minor-participant reduction for his reduced role in the conspiracy. He also objects to a two-point enhancement he received for maintaining a drug-involved premises. The district court was not persuaded, and neither are we. The judgment below is **AFFIRMED**.

## I

For the most part, the facts in this case are undisputed. Hernandez was a marijuana distributor for an unknown drug supplier. On at least three occasions, Hernandez procured an abandoned warehouse in Madison County, Kentucky, as a delivery point for 1,000-pound shipments of marijuana. The supplier, in turn, paid him at a rate of $5,000 a shipment for most of these efforts, but fell behind on payments at a certain point. "Ashamed," the supplier offered to satisfy this debt by giving Hernandez 2 kilograms of cocaine from a 28-kilogram shipment set to arrive in Kentucky. Hernandez needed to pick up only the 2 kilograms from the "shipping place" for the bulk transaction. Hernandez agreed.

Soon afterward, the supplier called Hernandez with a problem: The cocaine was missing. Concerned that police had interdicted the shipment or that his cocaine distributor's underling had absconded with it, the supplier divulged the names of the people involved. The supplier also informed Hernandez that the operation had found other people to receive the shipment because Hernandez's subordinates did not want to do the job. Hernandez then volunteered to get on the internet and see if he could find out what happened. Hernandez did so, but he also called his subordinates and chastised them for refusing to take the cocaine.

A few hours later, Hernandez's subordinates informed him that the DEA had confiscated the cocaine and arrested those involved. Hernandez and his supplier then charged off the transaction and apparently forgot about the matter until four months later, when the DEA confronted Hernandez about his role in the cocaine delivery and his position as a marijuana distributor. Hernandez confessed to both enterprises and eventually pled guilty to federal

cocaine charges in exchange for the Government's agreement not to prosecute him for the marijuana offenses.

At sentencing, however, the probation officer recommended that Hernandez be sentenced based on all 28 kilograms of cocaine. This quantity set his base offense level at 32. *See* USSG § 2D1.1(c)(4). The probation officer also recommended a two-level enhancement for maintaining a drug-involved premises, based on Hernandez's procurement of the marijuana delivery point. USSG § 2D1.1(b)(12). Hernandez objected to both recommendations and moved for a two-level downward adjustment based on his asserted "minor" role in the cocaine conspiracy. *See* USSG § 3B1.2(b). The government opposed this reduction. The district court sided with the government on all three issues. In particular, the court found that Hernandez could be held responsible for the full 28 kilograms of cocaine as a result of his investigation into the fate of the shipment. *See* R. 50 at 343–44 (noting that, "if the Court were to only consider the actions occurring prior to the intercept of the 28 kilograms, I would agree that only 2 kilograms should be attributed to this defendant," but that Hernandez's subsequent actions "expanded his role in the conspiracy"). Hernandez appeals his sentence.

**II**

We review a district court's sentencing determinations for both procedural and substantive reasonableness. *See, e.g.*, *United States v. Groenendal*, 557 F.3d 419, 422 (6th Cir. 2009). A sentence may be procedurally unreasonable if the district court "fail[ed] to calculate (or improperly calculate[ed]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the [18 U.S.C.] § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). When considering procedural reasonableness, we review the district court's findings of fact for clear error but review mixed questions of fact and law de novo. *Id.* at 423 (citing *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006); *United States v. Georgia*, 279 F.3d 384, 386–87 (6th Cir. 2002)). "If a sentence is procedurally sound, we then review the sentence for substantive reasonableness under an abuse of discretion standard." *Id.* (citing *Gall*, 552 U.S. at 51).

Hernandez has advanced three challenges to the procedural reasonableness of his sentence; he does not appear to have advanced a separate challenge based on substantive unreasonableness. For the reasons that follow, we reject all of Hernandez's challenges and affirm his sentence.

## III

Hernandez's first objection relates to his responsibility for the cocaine delivery. He makes two arguments on this point. First, he argues that the district court erred in attributing all the cocaine to him. Second, he contends that he should have received a two-level reduction in his offense level because he was a minor participant. Neither argument is persuasive.

## A

The district court did not err in attributing all 28 kilograms to Hernandez. A controlled-substances defendant must be sentenced based on the drugs for which he is personally responsible, a quantity which may or may not be the same as the total quantity distributed by the larger conspiracy. *See United States v. Campbell*, 279 F.3d 392, 399–400 (6th Cir. 2002). Under the Guidelines, the defendant may be sentenced for:

> all acts and omissions of others that were
> > (i)      within the scope of the jointly undertaken criminal activity,
> > (ii)     in furtherance of that criminal activity, and
> > (iii)    reasonably foreseeable in connection with that criminal activity
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

USSG § 1B1.3(a)(1)(B). Hernandez concedes that the delivery of all 28 kilograms was foreseeable to him. However, he argues that the delivery of the entire shipment was not "within the scope of [his] agreement" and is therefore "not relevant conduct under subsection (a)(1)(B)." USSG § 1B1.3, Application Note 3(B).

As an initial matter, Hernandez is mostly correct that de novo review applies to this question. The application of the Guidelines to undisputed facts is generally a question of law,

and we give no deference to the district court on such issues. *Groenendal*, 557 F.3d at 422–23. However, to the extent that Hernandez objects to the district court's factual findings about his intent and motive, we review only for clear error. *United States v. Swiney*, 203 F.3d 397, 401 (6th Cir. 2000).

All 28 kilograms of cocaine were within the scope of the conspiracy. Hernandez did not simply agree to accept 2 kilograms of cocaine out of a 28-kilogram shipment as payment for his supplier's debt. After the shipment disappeared, Hernandez volunteered to track it down for the supplier and also chastised his subordinates for not initially agreeing to accept the shipment. *Id.*, ¶ 16. There is no clear error in the district court's conclusion that this action was intended to further the conspiracy. R. 50, Sentencing Tr., PID 332–23. Indeed, it is the most logical inference available. The point of locating a missing shipment is to get it back into the pipeline of commerce. Thus, even if Hernandez had not been a member of the 28-kilogram conspiracy before volunteering to find the missing shipment, he became one when he "advised [the supplier] he would get on the internet to see if he could determine what had happened" and when he called his subordinates to help track down the shipment. We therefore agree with the district court's finding that Hernandez's actions after the disappearance of the shipment "expanded his role in the conspiracy" such that he could properly be held accountable for the full 28 kilograms, rather than only the 2 kilograms that he was to receive.

Hernandez insists at some length that using the internet is not a crime, and therefore cannot be relevant conduct under the Guidelines. *See United States v. Hodge*, 805 F.3d 675, 680 (6th Cir. 2015). This argument is of no help to Hernandez. Of course it is not illegal to use the internet. But it *is* illegal to assist in the commission of a crime, to assist another in avoiding punishment, to try and conceal a felony, or to do any act in furtherance of a conspiracy, regardless of whether the person uses the internet. *See* 18 U.S.C. §§ 2, 3, 4, 371; 21 U.S.C. § 846. Indeed, the Guidelines expressly contemplate that such post-hoc maneuvering can trigger associational sentencing liability. USSG § 1B1.3(a)(1)(B) (referring to acts done "in the course of attempting to avoid detection or responsibility for th[e] offense"). Trying to discover whether an illegal shipment of drugs has been intercepted by law enforcement fits this description. The district court did not err in holding Hernandez responsible for all 28 kilograms.

**B**

The district court also did not err in denying Hernandez's request for a minor-participant reduction.

Hernandez is incorrect when he says that de novo review applies to this question. To be sure, the application of a Guidelines adjustment to undisputed facts is usually a question of law subject to de novo review. *Groenendal*, 557 F.3d at 422–23. But where, as here, the applicability of an adjustment "depends heavily on factual determinations," clear-error deference applies. *Id.* (quoting *United States v. Harris*, 397 F.3d 404, 409 (6th Cir. 2005)) (directly addressing USSG § 3B1.2). The role of a defendant as a "minimal" or "minor" participant nearly always turns on the sound judgment of the district court, not on abstract principles of law. *Id.* We therefore review the district court's denial of a minor-participant adjustment for clear error. *Id.*

The district court's decision was not clear error. "To be clearly erroneous . . . a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *United States v. Perry*, 908 F.2d 56, 58 (6th Cir. 1990) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). A minor-role reduction is inappropriate unless the defendant proves, by a preponderance of the evidence, that he is "'substantially less culpable than the average participant' in the criminal enterprise." *United States v. Miller*, 56 F.3d 719, 720 (6th Cir. 1995) (quoting *United States v. Smith*, 918 F.2d 664, 669 (6th Cir. 1990)).

The relevant inquiry is thus whether Hernandez's conduct was substantially less culpable than the conduct of the average participant in the instant criminal enterprise. *See United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) ("A minimal participant is one who is 'plainly among the least culpable of those involved in the conduct of a group,' and a minor participant is one who 'is less culpable than most other participants, but whose role could not be described as minimal.'") (quoting USSG § 3B1.2, cmt. nn. 1, 3 (1998)). The Application Notes to § 3B1.2 provide a non-exhaustive list of relevant factors, including "the degree to which the defendant

understood the scope and structure of the criminal activity" and "the degree to which the defendant stood to benefit from the activity." USSG § 3B1.2, Application Note 3(C).

The district court's conclusion makes sense in light of the facts presented here and therefore was not clear error. As the district court recognized at sentencing, Hernandez knew the precise scope of the conspiracy, unlike low-level members of the enterprise, such as couriers. The district court also noted that Hernandez was unique among participants in that he stood to reap a significant benefit from the conspiracy's success, rendering him "quite high on the ladder." The district court further noted that by volunteering to locate the missing shipment, Hernandez intended "to provide information to allow the supplier to protect himself or to take further actions," cutting against a finding that Hernandez was a minor participant. That is, Hernandez agreed to act as a sort of quality-control figure who held the trust of the supplier, investigating the fate of the missing shipment "at the request of the conspiracy's central figure." *United States v. Williams*, 14 F. App'x 469, 473 (6th Cir. 2001). Indeed, it is probable that Hernandez agreed to locate the shipment *because of* his vested interest in the transaction. Such actions fit comfortably with those of a mid-level partner with a personal stake in the enterprise, rather than a mere associate who, while important, is expendable. *See United States v. Elias*, 107 F. App'x 634, 639 (6th Cir. 2004) (affirming denial of minor-role reduction even though defendant was not "high on the operation's organizational pyramid" because his actions rendered him "at least as culpable as an average participant in the fraudulent scheme"). Perhaps another factfinder might have seen it differently, but this decision was not clear error.

**IV**

Finally, Hernandez asserts that he should not have received a drug-premises enhancement under USSG § 2D1.1(b)(12). Specifically, he argues that he did not have sufficient control over the abandoned warehouse used to receive drug shipments. We disagree.

The drug-premises enhancement has three elements: The defendant must (1) knowingly (2) open or maintain any place (3) for the purpose of distributing a controlled substance. *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). Because this Guideline is based on 21 U.S.C. § 856 and uses the same operative language (*maintaining*), precedent interpreting both

the Guideline and the statute is instructive.  *Id.*  It does not appear that we have interpreted the Guideline in the context of an abandoned commercial building.  However, our precedent is sufficiently instructive to foreclose Hernandez's argument.[1]

At issue here is the *maintaining* element.  When deciding whether the defendant maintained a premises for distributing drugs, we must consider "whether the defendant held a possessory interest in . . . the premises" and "the extent to which the defendant controlled access to, or activities at, the premises."  USSG § 2D1.1, Application Note 17.  If a defendant does not have a legal interest in the premises, the enhancement may still apply if the government makes a sufficient showing of de facto control.  *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010) (discussing the analogous requirements of 21 U.S.C. § 856(a)(1)); *United States v. Tippins*, 630 F. App'x 501, 504 (6th Cir. 2015).  To prove control under this standard, however, the government must show something more than the act of distribution from the premises.  *See United States v. Clavis*, 956 F.2d 1079, 1090–91 (11th Cir. 1992) (followed by *Russell*, 595 F.3d at 644).  Otherwise, the law would punish someone twice for the same act.  *Id.*

*Russell* and *Clavis* articulated a long list of things that can provide evidence of maintenance.  These facts include "control, duration, *acquisition of the site*, renting or furnishing the site, supervising, protecting, supplying food to those at the site, and [maintaining] continuity."  *Russell*, 595 F.3d at 644 (quoting *Clavis*, 956 F.2d at 1091) (emphasis added).  We have upheld the use of the enhancement when the defendants "rented" houses from drug addicts by giving them cocaine, *United States v. Cannon*, 552 F. App'x 512, 516 (6th Cir. 2014), or when the defendant's coconspirators resided at the premises and received heroin from the defendant multiple times per week.  *United States v. Murillo-Almarez*, 602 F. App'x 307, 309, 312 (6th Cir. 2015).  Although a person need not be present at the location constantly for the enhancement to apply, the word *maintains* "contemplates a defendant who is more than a casual

---

[1]We have not clearly articulated the standard of review for the many issues which can be raised by the USSG § 2D1.1(b)(12) enhancement.  *United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014).  However, we need not decide that larger issue here.  The issue before us now is purely legal—neither party appears to dispute the facts as they were decided by the district court.  Thus, regardless of what the standard of review might be in a more complicated case, we would review the legal-interpretation issue de novo.

visitor." *United States v. Flores-Olague*, 717 F.3d 526, 532 (7th Cir. 2013) (internal citations and quotation marks omitted); *see also United States v. Carter*, 834 F.3d 259, 262 (3d Cir. 2016).

Hernandez's acts satisfy the maintenance element. He secured the abandoned warehouse for at least three separate shipments of marijuana, and expected to be paid handsomely for each effort. He had access to the site and was in control of it during each delivery. These acts—securing the site, using it multiple times, and controlling the site during each event—satisfy the government's burden of proof. *See Russell*, 595 F.3d at 644; *Murillo-Almarez*, 602 F. App'x at 312; USSG § 2D1.1, Application Note 17.

The fact that others could have used the warehouse in-between the three shipments is irrelevant. What matters, instead, is Hernandez's relationship to the site at the times he used it. It is clear that Hernandez controlled the premises at those times, since he had procured them. Our cases are clear that informal dominion over a site is enough (even if it does not come with the formal right to exclude or right to control) because "the maintaining-a-premises enhancement does not come with a Statute of Frauds defense." *Cannon*, 552 F. App'x at 516. "In ordinary speech," the act of procurement implies a significant level of practical control, familiarity, and responsibility. *See id.* (analyzing the "renting" criteria of USSG § 2D1.1 pursuant to the ordinary meaning of that concept). We are therefore satisfied that, on these facts, the enhancement is warranted.

**V**

There is no error in Hernandez's sentence. We **AFFIRM** the judgment of the district court.