NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Case Nos. 17-2172/2173

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

May 31, 2018

DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,            )
                                     )
        Plaintiff-Appellee,          )        ON APPEAL FROM THE UNITED
                                     )        STATES DISTRICT COURT FOR
v.                                   )        THE EASTERN DISTRICT OF
                                     )        MICHIGAN
ALFORNIA JOHNSON,                    )
                                     )
        Defendant-Appellant.         )

BEFORE:  COOK and DONALD, Circuit Judges; HALE, District Judge.[*]

COOK, Circuit Judge.  As part of a multi-state conspiracy, Alfornia Johnson helped distribute large quantities of oxycodone pills in Ohio.  After pleading guilty to conspiracy to distribute controlled substances, Johnson fled.  Following his arrest two years later, the district court sentenced him to 188 months' imprisonment for his involvement in the drug conspiracy, finding that his managerial role warranted an enhancement.  Johnson appeals his sentence, challenging that enhancement and the quantity of drugs attributed to him at sentencing.  For the reasons explained here, we AFFIRM.

**I.**

Beginning in 2008, Johnson and others fraudulently obtained prescription medications in Michigan and resold those pills at substantial markups in Ohio and elsewhere.  Doctors in Michigan wrote sham prescriptions for drugs, particularly oxycodone, that co-conspirators would

---

[*] The Honorable David J. Hale, United States District Judge for the Western District of Kentucky, sitting by designation.

then fill at cooperating pharmacies. In total, those physicians prescribed more than 500,000 doses of oxycodone, carrying a street value over $10 million. As part of that conspiracy, Johnson helped develop and maintain a pill distribution network in Portsmouth, Ohio. A grand jury indicted Johnson for conspiracy to distribute and possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a), 846; he pleaded guilty. Once released on bond, however, Johnson disappeared for roughly two years, eventually pleading guilty to failure to appear.

The Presentence Investigation Report ("PSR") determined that Johnson distributed pills equivalent to at least 3,000 kilograms of marijuana, setting a base offense level of 32. The PSR also recommended a three-point enhancement for Johnson's role as a manager or supervisor in the drug conspiracy and a two-point enhancement for obstruction of justice owing to Johnson's failure to appear. In total, the PSR recommended a Guidelines range of 262 to 327 months' imprisonment, per an offense level of 37 and a criminal history category of III.

At the sentencing hearing, the district court overruled Johnson's objections to the PSR's drug-quantity calculations and the manager/supervisor enhancement. Finding the PSR's recommended Guidelines range accurate but excessive relative to Johnson's co-conspirators, the court varied downwards, sentencing Johnson to 188 months for the drug conspiracy and 36 months for failing to appear. Johnson appeals his drug conspiracy sentence.[1]

---

[1] Although Johnson initially challenged both sentences, he now concedes that he cannot appeal the 36-month sentence for failing to appear because of the appeal waiver in his plea agreement.

## II.

We review sentencing decisions deferentially, for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). "This review has two components: procedural reasonableness and substantive reasonableness." *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015). Johnson challenges only the procedural reasonableness of his sentence.[2] A district court errs procedurally by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

### A. Drug-Quantity Finding

Johnson first presses that the evidence was "too speculative" to support the district court's drug-quantity determination—a factual finding that we review for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). "An estimate will suffice as long as it is supported by a preponderance of the evidence." *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013).

The Sentencing Guidelines recommend an offense level of 32 for distributing between 3,000 and 10,000 kilograms of marijuana—or at least approximately 5,600 80-milligram oxycodone pills under the Guidelines' conversion table. *See* U.S.S.G. § 2D1.1(c)(4); *id.* § 2D1.1

---

[2] In his brief, Johnson states that his sentence is "both procedurally and substantively unreasonable," but fails to develop any argument for why his sentence is substantively unreasonable. Because "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," we address only the procedural reasonableness of Johnson's sentence. *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

cmt. 8(D). The PSR determined that Johnson distributed 9,810 80-milligram oxycodone pills in Ohio, which the district court confirmed after the sentencing hearing.

At the hearing, ATF Agent George Linen described his interviews with members of Johnson's distribution network. One member, Kacee Porter, recounted five separate trips that Johnson made to Ohio in 2008. Through the first four trips alone, according to Porter, Johnson and a co-conspirator sold 8,000 80-milligram oxycodone pills. Damon Mason, another co-conspirator, testified that he and Johnson made 15 to 20 trips to Ohio between 2009 and 2010, selling 200 to 500 80-milligram pills on each trip—conservatively, at least another 3,000 pills in total.

As still further proof, the Government provided a chart summarizing over $145,000 in wire transfers involving Johnson from 2008 to 2011. Agent Linen explained that these wire transfers occurred at the times when Mason and Porter alleged Johnson sold drugs in Ohio. According to Mason, he and Johnson would wire some of their drug-sale proceeds back to Detroit, driving back with the rest. Taking the chart and testimony together, the Government argues that the court had ample grounds for finding that Johnson distributed well over 5,600 pills.

We agree. The sales Mason and Porter described offered sufficient grounds for the district court's determination that Johnson distributed pills equivalent to at least 3,000 kilograms of marijuana. *See United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004) ("Testimonial evidence from a co-conspirator may be sufficient to determine the amount of drugs for which a defendant should be held accountable."). Notably, Johnson neither disputes Mason's testimony nor

challenges Porter's statements to Agent Linen. And given the wire transfers supporting that testimony, we cannot conclude that the district court's finding constituted clear error.

## B. Section 3B1.1(b) Enhancement

Next, Johnson challenges his sentencing enhancement for being a manager or supervisor. *See* U.S.S.G. § 3B1.1(b). We review the district court's application of this fact-intensive guideline deferentially. *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013).

In evaluating Johnson's role in the conspiracy, the court found that Johnson worked "shoulder to shoulder" with Mason to organize the network's dealers and users in Portsmouth "to assist them in offloading large quantities" of pills. Johnson set "hundred pill quantity minimums" for his sales, the court determined, demonstrating that he exercised "supervisory and organizational responsibilities" and sought a "larger portion of the fruits of the criminal activity." And the court recognized that Johnson supplied this network as part of a multi-state conspiracy to deliver "massive distributions" of pills to Ohio. All of this exceeds what we have previously found sufficient to warrant a role enhancement. *See e.g.*, *United States v. Mitchell*, 295 F. App'x 799, 802 (6th Cir. 2008) (recognizing that "[c]oordinating even a single delivery of drugs via a courier suffices"); *United States v. Williams*, 894 F.2d 208, 214 (6th Cir. 1990) (holding the defendant's admission that he set up a cocaine transaction justified an enhancement).

Johnson nevertheless insists that he did not direct or control any of his sellers. As explained, the evidence suggests otherwise. More fundamentally, we rejected a similar claim in *United States v. Cannon* because this argument conflates the enhancement for "a manager or supervisor" with the more severe enhancement for "an organizer or leader." 552 F. App'x 512,

5

517 (6th Cir. 2014) (quoting U.S.S.G. § 3B1.1). "Control over subordinates is necessary to trigger the organizer/leader enhancement," *Cannon* explained, "and is one of the factors that distinguishes an organizer or leader from a manager or supervisor." *Id.* For the enhancement here, Johnson need not have exercised control over subordinates—all he had to do was supervise or manage them. As in *Cannon*, we agree that the court permissibly applied the lesser enhancement.

## C. Personal Characteristics and History

Johnson's claim that the district court failed to consider his "tragic personal history" at sentencing also falls short. Although the district court must consider the 18 U.S.C. § 3553(a) factors, the sentencing judge is not required to explicitly address every mitigating argument that a defendant makes so long as the judge satisfies "the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Madden*, 515 F.3d 601, 611–13 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). And because Johnson failed to raise this claim at the sentencing hearing despite the court asking the *Bostic* question, we review for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008).

The court discussed Johnson's involvement in the drug conspiracy—it was "very extensive, and he did supervise . . . but he didn't invent the wheel"—and noted Johnson's history of obstructing justice by disappearing for several years. Beyond describing the nature of Johnson's offenses and his history, the court reviewed other factors, including providing just punishment, promoting respect for the law, protecting the public, and the seriousness of the conduct. *See* 18 U.S.C. § 3553(a).

6

After reviewing Johnson's co-conspirators' sentences, the court concluded that Johnson's total Guidelines range of 262 to 327 months for both offenses was "inappropriately harsh." Calculating that Johnson's range would have been 151 to 188 months had he not fled, the court sentenced him to 188 months for the drug conspiracy and then 36 months for failing to appear. Because the court considered § 3553(a) and provided a reasoned basis for the sentence, it did not plainly err. *See United States v. Tanner*, 382 F. App'x 421, 427–28 (6th Cir. 2010) (recognizing that a district court need not "mention each of the personal characteristics raised by [the defendant], especially since it explicitly considered other factors that fall under § 3553(a)(1)").

## III.

We AFFIRM the district court's judgment.