NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0162n.06

Case No. 19-2417

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 25, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| JOHN CREECH, | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

_____

BEFORE: SILER, GIBBONS and KETHLEDGE, Circuit Judges.

SILER, Circuit Judge. John Creech received drugs on consignment. And he sold drugs on consignment. Those credit relationships show trust with his supplier and with his dealer. Trust, in turn, demonstrates a conspiracy. But Creech believes there is a problem—the Government waited too long to prosecute him under the statute of limitations and under the Constitution. Creech's argument fails for two reasons. First, a conspiracy continues until it is abandoned or accomplished. Neither happened. Second, the Government had good reason for the delay. Creech killed a man. The Government was entitled to wait for the conclusion of that trial. Creech's other complaints about the introduction of his ex-wife's testimony and a *Brady* violation are similarly unavailing. Accordingly, we AFFIRM Creech's conviction.

I

Creech lived in California and sold drugs. But he did not limit his sales to California. Beginning in May 2012, he cultivated a relationship with Craig Todd—a drug dealer in Detroit—to sell cocaine and heroin outside the state. In furtherance of their business deal, Creech provided Todd three kilograms of heroin on credit. The quality was so poor; however, Todd did not think he could sell it. So, Creech called his supplier. After both men spoke to the supplier, Creech told Todd that he would return in a few days. And he did.

Creech returned with a better batch of heroin a few days later. Despite the enhanced quality, Todd's sales came slowly. When Creech called to check in, Todd revealed that he had only sold 100 grams. Creech returned to Todd's house to collect the minimal proceeds. Creech called his supplier, who instructed him to take back two kilograms of the product because Todd was selling it too slowly.

Around the same time, Creech's home life spiraled out of control. He learned his wife, Chandrika Cade, was having an affair with Gavin Smith. *People v. Creech*, 2019 WL 1122691, at *1-3 (Cal. Ct. App. Mar. 12, 2019). An enraged Creech confronted the couple in a parking lot and killed Smith. *Id.* at 3.

Fearing lockup on a separate drug charge, Creech texted Todd to give the heroin proceeds to Cade. He also asked Cade to collect the money Todd owed him, which Cade knew was a drug debt.

Todd faced legal problems of his own. Before he could finish selling Creech's heroin, Todd was ensnared by the Drug Enforcement Agency (DEA) and worked for the DEA after August 14, 2012. Todd explained that Creech fronted him heroin to sell.

While Creech was being detained on separate drug charges, Cade was still trying to collect the drug money that Todd owed Creech. As part of the investigation, Todd went to California and gave Cade $5,000 for the "H." Todd next met with Creech in jail where he told Creech that he had given $5,000 to Cade. In response, Creech held up a napkin with "$95" written on it—the amount Todd still owed him in thousands. Creech explained that he still owed his supplier for the heroin, who was holding Creech's motorcycle until Creech was able to repay his debt. Creech said that the supplier had tried to reach Todd but was unable to. Creech gave Todd his supplier's number and told him to pay him directly.

In late September 2013, the Government filed a criminal complaint against Creech. *United States v. Creech*, 13-cr-30588, R. 1 (E.D. Mich. Sept. 24, 2013). The complaint charged him with conspiring to possess with intent to distribute more than 100 grams of heroin. *Id.* That complaint largely echoed the indictment filed four years later.

The discovery of Smith's body brought yet more legal difficulties for Creech. California charged him with first-degree murder. At trial in July 2017 a jury convicted him of voluntary manslaughter.

On August 17, 2017, a federal grand jury indicted Creech for conspiring with intent to distribute heroin. He moved to dismiss those charges as barred by the five-year statute of limitations. The district court denied that motion.

Creech's drug trial finally came. When Cade was called to testify, Creech sought to exclude her testimony as confidential marital communications. The district court rejected that motion and determined the privilege did not apply.

At trial, Creech also complained of a *Brady* violation. DEA Agent Bryan Sartori testified that he had unsuccessfully attempted to forensically extract the contents of Creech's phone. But

Creech never received a forensic report of the failure. The Government, however, told the district court that it did not have possession of a report and did not believe it existed. The district court found no *Brady* violation.

At the close of evidence, Creech moved for judgment of acquittal based on the statute of limitations. Again, the district court rejected the argument, relying on Creech's continued pursuit of payment. After his conviction, Creech moved for a new trial for the same statute of limitations reason. The district court denied the motion. Creech was sentenced to 130 months, concurrent with his state manslaughter sentence.

II

We review de novo whether sufficient evidence supported Creech's conviction. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011). We consider whether, "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992) (internal citations omitted).

Creech alleges his drug conspiracy conviction was barred by the five-year statute of limitations. 18 U.S.C. § 3282(a). In general, however, a drug conspiracy continues until it is either abandoned or it accomplishes its goal. *United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003). Creech does not claim that he withdrew from the conspiracy. Nevertheless, a conspiracy requires more than one participant, *Rogers v. United States*, 340 U.S. 367, 375 (1951), and a government informant cannot be a coconspirator. *United States v. Hayden*, 68 F. App'x 530, 532 (6th Cir. 2003). So, Creech claims the drug conspiracy ended after Todd turned government witness—five years and three days before his indictment. But Todd was not Creech's only coconspirator. To the

contrary, enough circumstantial evidence supported the existence of a second coconspirator, the unnamed supplier, and thus the conspiracy continued into the statute of limitations period.

Drug conspiracies often involve multiple tiers of drug dealers working in tandem. *See United States v. Henley*, 360 F.3d 509, 513 (6th Cir. 2004). That is, dealers form a chain from supplier to consumer. At the top, an unnamed supplier provided drugs to Creech. And Creech, in turn, gave those drugs to Todd. At trial, Todd testified to both his relationship with Creech and Creech's relationship with the unnamed supplier. He detailed how: (1) Creech was able to exchange poor quality heroin for better heroin for Todd to sell on consignment; (2) Todd heard Creech update his supplier on the sales' progress; (3) the supplier instructed Creech to take back some heroin after Todd's sales lagged; (4) Creech's motorcycle was being held to satisfy a drug debt; and (5) Creech instructed Todd to repay his supplier directly. That type of "delayed payment or credit arrangement suggests more than a buyer-seller arrangement between the parties"; it suggests a conspiracy. *Id*. at 514 (cleaned up).

Creech's attacks on Todd's credibility are misplaced. Todd testified to a common plan to sell heroin. That is enough to establish a conspiracy. *See United States v. Soto,* 794 F.3d 636, 657 (6th Cir. 2015) (holding the testimony of a coconspirator is sufficient to establish a conspiracy). Because Creech never abandoned the conspiracy with his supplier, the conspiracy continued into the statute of limitations period.

Regardless of the statute of limitations, Creech also claims the pre-indictment delay violated his Fifth and Sixth Amendment rights. Because Creech did not raise either argument in the district court, we review these claims for plain error. *United States v. Williams*, 683 F. App'x 376, 382 (6th Cir. 2017). Here, there may be some overlap between the rights. The Fifth Amendment governs pre-indictment delay. *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir.

2009). And the Sixth Amendment governs post-accusation delay. *Id.* Usually, an accusation comes in the form of an indictment, but Creech asserts that a criminal complaint is enough. While the Government's delay was admittedly long, Creech cannot show plain error.

*Fifth Amendment*. Creech alleges the pre-indictment delay violated his Fifth Amendment rights. But the acceptability of a pre-indictment delay is typically measured by the statute of limitations. *Id*. at 425. And Creech was indicted within the limitations period. Nonetheless, the Fifth Amendment will protect him if he shows: (1) the government intentionally delayed the indictment to gain a tactical advantage; and (2) substantial prejudice. *Id.* at 424. But the Government had two valid reasons for the delay: (1) allowing California to finish its homicide prosecution, and (2) waiting to see the results of that prosecution. *United States v. Watford*, 468 F.3d 891, 903 (6th Cir. 2006). Thus, his claim must fail. *Schaffer*, 586 F.3d at 426; *see also United States v. Greene,* 737 F.2d 572, 575 (6th Cir. 1984) (declining to reach prejudice prong where defendant failed to show that delay was an intentional device).

*Sixth Amendment*. The Sixth Amendment guarantees a defendant the right to a speedy trial. *Doggett v. United States*, 505 U.S. 647, 651 (1992). That right is triggered by an "arrest, indictment, or other official accusation." *Id.* at 655. Creech claims that the criminal complaint— filed in September 2013—started the speedy trial clock. But it is unclear whether a criminal complaint counts as an official accusation. Indeed, on this point, the circuits are split (even from within). *See Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 35 n. 2 (6th Cir. 2019) (recognizing split authority on whether a felony complaint starts the speedy trial clock); *Mann v. Beard*, 649 F. App'x 392, 393 (9th Cir. 2016) (acknowledging an intra-circuit split on whether a complaint triggers the speedy trial clock); *United States v. Richardson*, 780 F.3d 812, 813 (7th Cir.

2015) (federal complaint and detainer do not start the speedy trial clock). Creech, therefore, cannot show plain error. *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).

Creech further complains that his ex-wife's testimony was improperly admitted confidential marital communications. Unlike the adverse spousal privilege, the confidential marital communications privilege is held by both spouses. *United States v. Underwood*, 859 F.3d 386, 390 (6th Cir. 2017). To claim the privilege, Creech must show: (1) a legally valid marriage at the time of the communication; (2) the utterance or expression was intended to convey a message from one spouse to another; and (3) the communication was made in confidence. *Id.* Both parties agree that test is met. But even then, there are exceptions. The Government believes two apply: (1) the joint criminal exception and (2) the permanent separation exception. *See id*. The Government is correct that both apply here.

Creech directed Cade to collect his drug debts. Creech's request, therefore, pertained to joint criminal activity. *United States v. Gray*, 71 F. App'x 485, 489 (6th Cir. 2003). As a result, the "confidential marital communications are not protected." *United States v. Sims*, 755 F.2d 1239, 1241 (6th Cir. 1985).

Unsurprisingly, the marriage was on the rocks. Creech had murdered Cade's paramour and threatened her life, after all. But the confidential marriage privilege continues until permanent separation. *United States v. Porter*, 986 F.2d 1014, 1019 (6th Cir. 1993). So, were Creech and Cade permanently separated? In many ways, Creech and Cade acted that way: (1) Creech took off his wedding ring; (2) he agreed they were "completely done"; (3) Creech began a romantic relationship with another woman; (4) Creech and Cade slept in separate rooms; and (5) they had plans for divorce. This court has found permanent separation under similar circumstances. *See United States v. Cannon*, 552 F. App'x 512, 514 (6th Cir. 2014). Moreover, their separation was

permanent in hindsight. *Porter*, 986 F.2d at 1019. The district court did not abuse its discretion in finding that the couple was permanently separated and thus the confidential marriage privilege did not apply. *Cannon*, 552 F. App'x at 514.

Finally, Creech alleges that the prosecutor impermissibly failed to disclose a forensic search report of Todd's cellphone. To succeed, Creech must show that the report was: (1) suppressed; (2) favorable (exculpatory or impeaching); and (3) material. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Creech clears the first two hurdles. First, the Government did not disclose the report before trial.[1] Instead, an agent gave testimony about the report's findings on redirect examination. Second, the report contained potential impeachment evidence. The agent testified that he downloaded the contents of Todd's cellphone. After reviewing the messages, the agent did not find a text from Creech about heroin. Recall, however, that Todd alleged Creech sent him a text message about the drugs. Creech could have used the absence of the text message to impeach Todd's testimony.

But Creech cannot demonstrate the report was material. That is, he cannot show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). For Creech, the value in the report was in the absence of proof. In other words, the report did not show that a text about heroin had not been sent; it showed only that such a text could not be found. And that evidence came out at trial. Creech says he was prejudiced because he could not cross examine Todd about the report. Yet Creech does not explain what value that would have added to his defense. *See United States v. Howard*, 516 F. App'x 409, 410 (6th Cir. 2013) ("Prejudice is more difficult to prove when the evidence comes to light at trial."). The jury already

---

[1] In fact, the Government claims that it did not have a report.

knew they could only take Todd's word for the existence of the text message. Certainly, whatever harm Creech suffered from the late disclosure does not undermine confidence in the verdict. *See United States v. Smith*, 706 F. App'x 241, 244-45 (6th Cir. 2017).

AFFIRMED.